# Exhibit A



# UNITED STATES POSTAL SERVICE
# OFFICE OF INSPECTOR GENERAL

## MEMORANDUM OF INTERVIEW

| Interview Date: | 2/11/2020 |
|---|---|
| Case Name: | HERRON, SHAWN M. MANAGER OF CUSTOMER SERVICE, FALL RIVER, MA 02722, NARCOTICS |
| Case Number: | ▮ |
| Interviewee: | SHAWN M. HERRON |
| Interview Location: | FALL RIVER POST OFFICE, LOCATED AT 2 GOVERNMENT CENTER, FALL RIVER, MA 02722 |
| Interviewed By: | SPECIAL AGENT THOMAS V. DICARLO |
| Witnesses: | INSPECTOR JIM FOLEY III |

On February 11, 2020, the U.S. Postal Service-Office of Inspector General (OIG) Special Agent (SA) Thomas DiCarlo and Postal Inspector Jim Foley III of the United States Postal Inspection Service (USPIS) conducted an interview of Shawn Herron (Herron), Manager of Customer Service at the Fall River Post Office (FPO). The interview was conducted at the FPO, located at 2 Government Center in Fall River, MA.

The Reporting Agent (RA) and Inspector Foley identified themselves and explained that they were seeking information relevant to the investigation concerning his knowledge and his involvement with the allegation of reported missing express and priority parcels from the U.S. Mail. The interview commenced upon Herron's acknowledgement and indication he was willing to answer questions. Herron was read his Miranda warning and he signed and dated the OIG Miranda form (Attachment 1).

Herron stated the following during the interview:

Herron stated, he entered on duty to the FPO in March of 2018 and prior to that he worked at the Canton, MA PO. Herron stated, he lived at ▮ in Whitman, MA and was not a veteran of the military.

Herron stated, his brother ▮ Herron (▮) is an addict of heroin narcotics and has been in debt to an unknown man that ▮ made him aware of. Herron stated, ▮ lives in Brockton, MA and got mixed up with the wrong crowd. Herron stated, he only knew the unknown man through his brother ▮ and that the unknown dealt drugs

Page 1

RESTRICTED INFORMATION — This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

in the Brockton, MA area and surrounding communities. Herron stated, the unknown man was known to him as "▮" and that he had been handing off narcotics parcels to him for approximately 18 months.

Herron stated, ▮ was a black male, approximately 5'7", bald, husky build and always drove around in different vehicles with dealer license plates. Herron stated, ▮ would text him certain tracking numbers on priority and express parcels coming from Puerto Rico (PR) and western states including California (CA) and Oregon (OR). Herron stated, ▮ would instruct him to intercept these parcels going to specific addresses that ▮ provided to him in the Fall River area. Herron stated, he would open the parcels, remove the narcotics from the parcel and hand off the narcotics and or the parcels to ▮ and ▮ through the rear door at the FPO. Herron stated, the narcotic ▮ was receiving in the mail was cocaine.

Herron stated, he is not a user of cocaine or any other illegal substance, but he knew exactly how to profile parcels coming from foreign areas that appeared to contain narcotics. Herron stated, he has been to rehab for alcohol abuse but never narcotics.

Herron stated, he knows that ▮ rents the space for his car dealership business from a man named, "▮"). Herron stated, ▮ owns the car wash in Brockton, MA.

Agent's Note: (A search of "Google maps" revealed a ▮ Car Wash, located at ▮ ▮, Brockton, MA).

Herron stated, his brother ▮ informed him that he needed to pay back ▮ because he was heavily in debt to ▮. Herron stated, he started intercepting parcels for ▮ profiling and stealing additional parcels for ▮ to help out ▮ with re-paying his debt to ▮. Herron stated, ▮ is a connected guy and had threatened his brother ▮ for not paying his debt off. Herron stated, he did this to help his brother out.

Herron stated, he would steal parcels from the U.S. Mail stream, open them, remove the contents and sometimes recycle the boxes and or put them back in the mail stream for delivery, even though they were empty. Herron stated, he was looking for narcotics and would simply discard the boxes after he located narcotics. Herron stated, if the parcel did not contain narcotics, he would tape them back up and sometimes send them on their way.

Herron stated, he began shopping on his own for parcels coming from PR that appeared to contain narcotics, even parcels that ▮ hadn't instructed him to intercept, in hopes to pay off ▮'s debt. Herron stated, this went on for approximately 18 months.

RESTRICTED INFORMATION — This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

Herron stated, he did not know ▮'s last name but believed he had a stash house for the narcotics on ▮ in Whitman, MA. Herron stated, it's a condominium complex, near "Marcello's" but not sure if ▮ lives there.

Agent's Note: (A search of "Google Maps," revealed ▮ Whitman, MA is the location of the ▮, approximately a half of mile from "Marcello's Sandwich Shop," located at 733 Bedford Street in Whitman, MA).

Herron stated, he would take the parcel from the main floor of the FPO, sometimes directly off a certain route in the FPO and bring the parcel directly to this private office in the rear of the FPO. Herron stated, he would open the parcel and remove the contents and then text his brother ▮ that he had the narcotics in hand. Herron stated, his brother ▮ and ▮ would arrive together at the FPO and he would hand the parcel and/or narcotic to them from the rear blue door of the FPO.

Herron stated, ▮ has a dealership so he would drive different cars, sometimes a BMW, Audis or Porsches. Herron stated, he believed he has provided approximately fifteen parcels to ▮ and ▮ over the past couple of years. Herron stated, the narcotics are normally covered in a flexible plastic wrap and the parcels are filled with other packing materials, including spray foam or false labeled packaging. Herron stated, normally the narcotics were packed tightly to resemble the size of a brick, sometimes two separate bricks.

Herron stated, he is sober when he does this. Herron stated, ▮ has been asking him for additional addresses he could have his supplier send narcotics to in the Fall River area. Herron stated, he believes ▮'s source would inform him of the addresses and tracking numbers to have him search for. Herron stated, ▮ knew exactly what to look for when searching for the incoming parcels.

Herron stated, he never told other Postal employees to hold parcels for him or the Inspection Service and that he never told victims who called in looking for parcels, that they were seized by the Inspection Service. Herron stated, he would manipulate destination scans to the parcels, indicating scans such as, "no such address", "sent back to sender" or "pre-paid acceptance" scans.

Herron stated, 95% of the narcotic parcels he would steal were from PR and that he never dealt any of the narcotics himself and/or used the narcotics for himself. Herron stated, he was not paid for the service he provided ▮ because he believed he was paying off his brother's debt.

Herron stated, he would track the parcels via Postal Service Tracking databases and through his two cell phones, a work and personal phone. Herron stated, you have my consent to search both my phones, my desk top computer, my personal vehicle and my residence if needed.

RESTRICTED INFORMATION

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.



Herron stated, he believes ▮ is supposed to go to PR next week to negotiate some deal and that he believes employees of the PO in PR work with his supplier. Herron stated, he did not know which employees, but that Bill had mentioned it to him before.

Herron stated, ▮ prefers to FaceTime him through his brother ▮'s phone because he felt that this way Law Enforcement could not wiretap his FaceTime capabilities.

Herron stated, ▮ owns a ▮ on the Abington and Brockton, MA line, which Herron believes ▮ utilizes for a cover-up of his narcotics proceeds. Herron stated, it is located near a "Lobster Barn" on Abington Avenue, near a "Dunkin Donuts," but was not sure of the exact address.

Agent's Note: (A quick "Google Maps" search of "Lobster Barn" revealed the address being 96 Hancock Street, Abington, MA, not far from the Brockton, MA town line).

Herron stated, approximately 7 times he profiled non▮ related narcotic parcels, thinking they may have narcotics but came up empty handed. Herron stated, he would sometimes recycle the box or place it back into the mail stream. Herron stated, he did not do this at any other PO in the area and he didn't know if any other Postal employees were diverting narcotic parcels. Herron stated, if given the opportunity at a different PO, he probably would have continued diverting narcotic parcels.

Herron agreed to write a sworn written statement (Attachment 2).

## Attachments

Attachment 1:



Miranda Warnings, Herron, 2-11-2020.p

Attachment 2:



Sworn S Heron, 2-11-2020.pdf

RESTRICTED INFORMATION — This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

| PREPARED BY: SA THOMAS V. DICARLO | DATE: 2/12/2020 |
|---|---|

RESTRICTED INFORMATION — This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.



**UNITED STATES POSTAL SERVICE**
**OFFICE OF INSPECTOR GENERAL**
1735 NORTH LYNN STREET
SUITE 10000
ARLINGTON, VA  22209-2020

## MIRANDA RIGHTS

I, __Shaun Lemon__, have been advised by Special Agent __Dicarlo & USP. Foley__, who has identified himself/herself to me as a Special Agent of the United States Postal Service, Office of Inspector General, that he/she is conducting a criminal investigation.

I also have been advised that:

_SML_ 1. I have the right to remain silent;

_SML_ 2. Any statement I make can be used as evidence against me in a court of law and in other proceedings;

_SML_ 3. I have the right to consult with an attorney prior to and during any questioning;

_SML_ 4. If I cannot afford an attorney, one will be appointed to me by the court without cost, prior to any questioning;

_SML_ 5. I have the right to request an attorney at any time during this interview; and

_SML_ 6. If I decide to answer questions now, I still have the right to stop answering questions at any time.

I have read my rights or had them read to me as set forth above, and I understand my rights. With this understanding, I am willing to make a statement and answer questions. I do not wish to consult with an attorney at this time, and I do not wish to have an attorney present during this interview. I understand and know what I am doing. No promises or threats have been made to me and no coercion of any kind has been used against me.

Signature: _[signed]_ Date & Time: 02/11/20 12:20

Investigator: _[signed]_ Date & Time: 2-11-20 12:20

Witness: Fall River, MA P.O. Date & Time: 2-11-20- 12:20

_[signed]_

**MIRANDA FORM: RESTRICTED INFORMATION**

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released or disseminated to other parties without prior consultation with the Office of Inspector General. UNAUTHORIZED RELEASE MAY RESULT IN CRIMINAL PROSECUTION.



# UNITED STATES POSTAL SERVICE
# OFFICE OF INSPECTOR GENERAL

## SWORN STATEMENT

DATE: 02 / 11 / 20
         (Month) (Day) (Year)

STATEMENT OF: Sherry Herron

POSTAL SERVICE EMPLOYEE ID NUMBER (If applicable): _____

I, Sherry Herron, have been interviewed by Special Agent Dicarlo 3 / USP. Foley of the U.S. Postal Service, Office of Inspector General. At this time, I desire to make the following statement. I make this decision freely, knowingly, and voluntarily, and without any threats or promises having been extended to me.

Page 1 of 4

Initials: [signature]

**RESTRICTED INFORMATION**
**SWORN STATEMENT**

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

**STATEMENT**: Narrative, should be written in the first person.

I Shaun Henrm give this statement fully advising Postal Insp. & OIG that I have been involved in intercepting packages that may or may not have contained illegal items inside. Some packages have and some have not contained illegal things. I did this to keep the well being of my brother of whom was in trouble due to a debt obtained by "▓". I intercepted pieces of mail of which tracking numbers and addresses were provided to me and those said packages were picked up at the Fall River Post Office. Again I did this to protect my brother and would protect him by any means necessary if need be. I'm disgusted at my decision to be coerced into doing this and truly am sorry. I've been trying to get out of the Fall River Post Office in order to get out of this nonsense and to get a fresh start of which has not happened as of 8/11/20

Page 2 of 2(?)

Initials

**RESTRICTED INFORMATION**
**SWORN STATEMENT**

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

**STATEMENT**: *Narrative should be written in the first person.*

This has been going on off and on since approx. 7/19 and I've not counted the amount of times this has occurred but my best guess is approx. 15 times or so. I have on occasion refused other packages to be picked up in order to get my brothers debt paged off to no AVAIL. I've done my best to help my brother of which I have a strong bond with and it just doesn't seem to be enough. I'm willing to get full details on the involved parties and give this information to whomever needs it. I'm willing to be in full cooperation with all parties in hope I don't lose my 15 year career and my family. I'm embarrassed, disgusted, and shameful of my actions and truly apologize for what I have done, but it was to protect my brother whom I love and cherish deeply.

Page 3 of 4

Initials

**RESTRICTED INFORMATION SWORN STATEMENT**

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.

I acknowledge that I have read this statement consisting of __4__ pages in its entirety. I have initialed each page and correction and signed the statement. I declare under penalty of perjury that the foregoing statement is true and correct.

Signature: _____

Date and Time: __02/11/20   1:26pm__


I declare under penalty of perjury that the foregoing statement was given to me by __Shawn Herron__ on __2-11-20__.
        Name of Witness                                       Date

Special Agent: _____

Witness: _____

Witness: _____


Page __4__ of __4__

Initial: _____

RESTRICTED INFORMATION
SWORN STATEMENT

This report is furnished on an official need to know basis and must be protected from dissemination which may compromise the best interests of the U.S. Postal Service Office of Inspector General. This report shall not be released in response to a Freedom of Information Act or Privacy Act request or disseminated to other parties without prior consultation with the Office of Inspector General. Unauthorized release may result in criminal prosecution.