UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| V. | ) ) | Criminal No. 1:20-CR-10145-FDS |
| SHAWN HERRON | ) ) ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF DEFENDANT'S MOTION TO SUPPRESS STATEMENTS**

In response to the Court's, Saylor, C.J., "invitation" at the conclusion of the evidentiary hearing on June 29, 2021, the defendant Shawn Herron, submits the instant memorandum in further support of his pending Motion To Suppress Statements. The crux of the defendant's motion is that upon being confronted by postal inspectors on February 11, 2020 at the Federal Post Office in Fall River, MA and prior to being questioned and prior to his making verbal and written statements, the defendant stated that he wanted "representation"; he called his union rep by use of his work cellphone as that was the method for his union to retain counsel for him; he was not able to reach his union rep and pursuant to routine procedure expected her to return his call as soon as she was able to do so; he waited for his union rep to return his call and as he began to read a Miranda form, he again stated that he wanted "representation." While reviewing the Miranda form, he recognized a ring on his work cellphone and turned toward the cell phone which had been placed on his desk behind the table at which he was seated. The defendant saw that his work cellphone displayed the name "Kim Lewin", who was his union rep and once again asked to call his union rep. In response to his request to answer the call or to make another call, one of the inspectors stated that, "It is too late" or words

to that effect. As he made two requests to contact his union rep, the defendant stated that he wanted "representation", which meant being represented by a lawyer; however, he did not use the word "lawyer" in voicing either of his requests. Postal Inspector James Foley understood the defendant's requests for "representation" to mean something about legal matters. Inspector General Special Agent Thomas DiCarlo understood the defendant's request for "representation" to mean that he wanted to contact a lawyer. A criminal complaint and arrest warrant for the defendant had been issued by this Court the day before and in confronting or meeting with the defendant on February 11, 2020, time was not of the essence; there was no reason that the inspectors could not wait or delay their questioning of the defendant until he spoke with his union rep. Special Agent DiCarlo wanted to give the defendant "an opportunity" that he could take advantage of by speaking with him. Inspector Foley recalled that the defendant had made a call using one of his two cell phones. As a result of a recent recollection, Special Agent DiCarlo had a "vague memory" that the defendant may have made a cell call. The defendant asserts that at the outset of the meeting with the inspectors, he invoked his right to counsel.

The Sixth Amendment to the Constitution of the United States guarantees all defendants the right to counsel and the Fourteenth Amendment guarantees a defendant equal protection of the laws. If a defendant can afford to retain counsel, he or she must be permitted counsel of choice. United States v. Flanagan, 465 U.S. 259, 268-269(1988), Crooker v. California, 357 U.S. 433, 439 (1958), Glasser v. United States, 315 U.S. 60, 70 (1942), Powell v. Alabama, 287 U.S. 45 (1932), Panzardi-Alvarez v. United States, 879 F.2d 1975 (1st Cir. 1989). If a defendant cannot afford counsel, a lawyer must be appointed where incarceration may result. Scott v. Illinois, 440 U.S. 367, 371 (1979);

2

Gideon v. Wainwright, 372 U.S. 355 (1963). The right to counsel attaches at "critical stages" before, during and after trial. In Coleman v. Alabama, 399 U.S. 1 (1970), a "critical stage" was defined as any portion of the proceedings that could prejudice a defendant's trial. The Supreme Court subsequently held that the right to counsel does not begin until "the initiation of adversary judicial proceedings – whether by formal charge, preliminary hearing, indictment, information or arraignment." Kirby v. Illinois, 406 U.S. 682, 689 (1972). Since a criminal complaint had issued against the defendant, he had the right to counsel when the inspectors confronted him at the Fall River Post Office on February 11, 2020.

Given that the defendant was involved in a "critical stage" of criminal proceedings when confronted by the postal inspector and special agent, he had a constitutional right to counsel. Coleman v. Alabama, Id., Kirby v. Illinois, Id. When the right to counsel has attached and has been asserted, the government has an "affirmative obligation to respect and preserve the choice" and to refrain from conduct that "circumvents and ... dilutes the protection" Maine v. Moulton, 474 U.S. 159, 171 (1985). Statements elicited by government agents in violation of the right to counsel are suppressible under Massiah v. United States, 377 U.S. 201 (1964). In the instant case, the defendant's right to counsel guaranteed him by the Sixth Amendment was violated and his verbal and written statements must be suppressed pursuant to Massiah v. United States, supra. The government, however, in its argument to the Court at the conclusion of the evidentiary hearing, confused the issue before the Court by contending that the defendant's statements should not be suppressed as the defendant was neither in custody and his freedom to leave was not curtailed. These arguments are based on the Fifth

Amendment right to counsel under Miranda, which does not control the instant situation. In accordance with Massiah v. United States, supra, statements that have been "deliberately elicited" by government agents must be excluded if a defendant's invocation of his right to counsel has been violated. "Deliberate elicitation" includes not only actual interrogation, but any government contact, either open or surreptitious that "intentionally creates a situation likely to induce (a defendant) to make incriminating statements without the assistance of counsel," United States v. Henry, 447 U.S. 264, 274 (1980), or that "knowingly circumvent(s) the accused's right to have counsel present in a confrontation between the accused and a state agent." Main v. Moulton, Id. at 176. "…incriminating statements pertaining to pending charges are inadmissible at trial of those charges …if, in obtaining this evidence, the state … knowingly circumvented the accused's right to the assistance of counsel." Maine v. Moulton, Id. at 160. In the instant case, there is no evidence that after invoking his right to counsel by stating that he wanted "representation" two distinct times, that the defendant waived his Sixth Amendment rights under Massiah. In addition to the fact that there was no explicit waiver, either written or oral by the defendant, waiver here cannot be generally implied from the defendant's acknowledgment that he understood that he was electing to proceed without counsel. There was no inquiry of the defendant as to his deciding or wanting to proceed without counsel or his stating that he would proceed without counsel after waiting for a return call from his union rep. The government bears a heavy burden to show that the defendant waived his rights to counsel, knowingly, voluntarily, and intelligently and every reasonable presumption against waiver will be indulged. See, Tague v. Louisiana, 444 U.S. 469 (1979). (Waiver not proven by officer's testimony that he read rights to

4

defendant, where he made no effort to determine if he understood, was literate or "otherwise capable of understanding his rights.") There was no testimony by the postal inspector and agent that the defendant engaged in a volitional and cognitive waiver. Specifically, there was no evidence produced by the government that the defendant's relinquishment of his rights to counsel was, "…voluntarily in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Moran v. Burbine, 475 U.S. 412, 421 (1986). Nor was there any evidence that "the waiver (was) made with full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Moran v. Burbine, Id. at 421. If a suspect or a defendant asserts his right to counsel, the officers must immediately stop questioning him and even under a Fifth Amendment analysis, "Any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise." Miranda v. Arizona, 384 U.S. 436, 474 (1966). Even were the government to assert that the defendant's initial invocation of his right to counsel, was negated by his subsequently responding to the questioning by the inspector and agent, such an argument fails as the defendant's right for representation was not "scrupulously honored." Michigan v. Mosley, 423 U.S. 96, 103-1034 (1975). The government agents here did not permit the defendant to receive the return call from his union rep and/or to make a second call for "representation."

All doubt as to whether the defendant invoked his right to counsel is resolved by the proposition that suspects who assert the right to counsel receive greater protection, under the prophylactic rule of Edwards v. Arizona, 451 U.S. 477, 485 (1981). The Supreme Court held that interrogation is barred, "until counsel has been made available

... unless the accused himself initiates further communication, exchanges or conversations with the police." Absent the defendant's initiation, "it is presumed that any subsequent waiver ... is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." Arizona v. Roberson, 486 U.S. 675, 681 (1988) "Initiation" is defined as conduct that indicates the defendant's "willingness and desire for a generalized discussion about the investigation," rather than, "merely a necessary inquiry arising out of the incident of the custodial relationship." Oregon v. Bradshaw, 462 U.S. 1039 (1983), see also, United States v. Fontana, 948 F.2d 796, 805-806 (1st Cir. 1991). Moreover, if the defendant does not initiate the conversation, the officers must give him fresh warnings in order to establish a knowing and intelligent waiver at that point. In Arizona v. Roberson, Id., the Supreme Court interpreted Edwards v. Arizona, Id. to prohibit police reinitiated interrogation without counsel present, even if the accused has consulted with his attorney in the interim. Minnick v. Mississippi, 498 U.S. 146, 149-152 (1990). In the instant case, despite the defendant requesting "representation" for the second time, the inspector and agent continued to review the Miranda form with him, proceeded to question him and to obtain a written statement. The defendant did not himself engage in any sort of communication, exchanges or conversations with the officers or otherwise exhibit conduct that indicated a willingness and desire to discuss their investigation nor was the defendant given fresh warnings required to establish a knowing and intelligent waiver of his right to counsel.

The Supreme Court has held that, "whatever warnings suffice for Miranda's purposes will also be sufficient (for waiver of Sixth Amendment rights) in the context of post-indictment questioning," Patterson v. Illinois, 487 U.S. 285 (1985). The Court

simultaneously acknowledged that, "the Sixth Amendment's protection of the attorney-client relationship ... extends beyond Miranda's protection of the Fifth Amendment right to counsel", Id. at N.9, and that some waivers that will satisfy Miranda will still not satisfy Massiah; for example, a waiver by a defendant kept ignorant of his lawyer's efforts to contact him. Id. This reasoning applies to the instant case, as the inspector and agent did not allow the defendant to answer the call from his union rep in response to his initial call and did not allow him to make another call. Furthermore, although aware of the defendant's desire for "representation," which meant contacting an attorney, the inspectors did not afford him additional time to contact the union rep in a situation where there were no time limitations. In effect, the actions of the inspectors kept the defendant ignorant of the efforts of his union rep to contact him so as to arrange counsel for him.

Although the requirements of Miranda v. Arizona, supra do not govern the instant case, referring to the Miranda principles reinforces the defendant's claim that he invoked his right to counsel. "(I)f the individual stated that he wants an attorney, the investigation must cease until an attorney is present." Id. at 473-474. See also, Edwards v. Arizona, supra at 484. Once counsel is requested, officers cannot comply with Miranda by simply permitting the accused to speak with an attorney outside the interrogation room. See, Minnick v. Mississippi, supra at 252. Rather, Edwards v. Arizona, supra requires that officials not reinstate interrogation without counsel present, notwithstanding the presence of any opportunity of the defendant to consult with counsel.
Minnick v. Mississippi, supra at 153  An accused may invoke Miranda rights by choosing to remain silent or by requesting the assistance of an attorney. Miranda v. Arizona, supra at 473-474. If the accused requests an attorney, counsel must be provided before

questioning. See, Edwards v. Arizona, supra at 484-485. In addition, police officers may not undermine the Fifth Amendment right to counsel and obtain a valid Miranda waiver by delaying efforts to secure counsel in order to elicit a statement from the defendant. See, United States v. Lucas, 963 F.2d 243, 246 (9th Cir. 1992), United States v. Womack, 542 F.2d 1047, 1049, 1051 (9th Cir. 1976). The actions of the inspector and agent here in not allowing the defendant to respond to the return call from his union rep and to his making a second call to obtain counsel, constituted an undermining of the defendant's rights to counsel in order to elicit incriminating statements from the defendant in violation of both his Fifth and Sixth Amendment rights to counsel.

## CONCLUSION

The evidence produced at the hearing on the defendant's motion to suppress statements, demonstrates that he invoked his right to counsel, not once, but two times by his requests to call his union rep so as to obtain "representation." Inspector Foley and Special Agent DiCarlo, were each aware that by seeking "representation", the defendant wanted the services of counsel and that he made at least one cell telephone call to obtain counsel through his union rep. The officers did not scrupulously honor the defendant's requests for counsel and to the contrary, thwarted his efforts to obtain counsel. The Sixth Amendment right to the assistance of counsel, "protect(s) the unaided layman at critical confrontations' with his 'expert adversary', the government, after 'the adverse positions of government and defendant have solidified' with respect to a particular alleged crime" McNeil v. Wisconsin, 501 U.S. 171, 177-178 (1991), quoting United States v. Gouvenia, 467 U.S. 180, 189 (1984). Under the Sixth Amendment, a statement may not be "deliberately elicited" from a defendant in the absence of counsel, absent a waiver of that

defendant's Sixth Amendment rights." Fellers v. United States, 540 U.S. 519, 523-524 (2004). The defendant did not waive his Sixth Amendment right to counsel and the government did not satisfy the "weighty obligation of establishing a knowing and intelligent waiver of the defendant's Sixth Amendment rights." See, Brewer v. Williams, 430 U.S. 387, 403 (1977). Moreover, any "doubts (about the validity of waivers) must be resolved in favor of protecting a constitutional claim", Michigan v. Jackson, 475 U.S. 625, 632 (1986). And directly on point with the instant case, **a suspect's mere "acquiescence in police initiated questioning", after a recitation of his or her constitutional rights, does not produce a waiver of those rights if the defendant has already requested counsel.** Id. at 635  The defendant's invocation of his right to counsel, the failure of the inspector and agent to scrupulously honor the defendant's request for counsel and the absence of a valid waiver of the defendant's Sixth Amendment right to counsel, requires that his motion to suppress statements be allowed.

Respectfully submitted
By his attorney,
/s/ Bernard Grossberg
_____
Bernard Grossberg
38 Green Street
Milton, MA 02186
(617) 737-8558
B.B.O. No. 212900

## CERTIFICATE OF SERVICE

I, Bernard Grossberg, hereby certify that on July 8, 2021, I served a true copy of the **Supplemental Memorandum In Support Of Defendant's Motion To Suppress Statements** upon Assistant United States Attorney, Eugenia Carris, Office of the United States Attorney, 1 Courthouse Way, Boston, MA 02210 by electronic filing to all registered users.

/s/ Bernard Grossberg
_____
Bernard Grossberg