1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4    UNITED STATES OF AMERICA,          )
                                        )
5    vs.                                )   Criminal Action
                                        )
6    SHAWN HERRON,                      )   No. 20-10145-FDS
                         Defendant      )
7                                       )
                                        )
8                                       )

9

10   BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

11
                          RULE 11 HEARING
12

13

14
              John Joseph Moakley United States Courthouse
15                      Courtroom No. 10
                        1 Courthouse Way
16                      Boston, MA 02210

17

                        October 22, 2021
18                        10:08 a.m.

19

20

21

22

23                      Valerie A. O'Hara
                      Official Court Reporter
24       John Joseph Moakley United States Courthouse
                        1 Courthouse Way
25                      Boston, MA 02210
                  E-mail: vaohara@gmail.com

1    APPEARANCES:

2    For The United States:

3         United States Attorney's Office, by EUGENIA M. CARRIS,
     ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way,
4    Suite 9200, Boston, Massachusetts 02210;

5    For the Defendant:

6         Law Office of Bernard Grossberg, by
     BERNARD GROSSBERG, ESQ., 38 Green Street, Milton,
7    Massachusetts 02185.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS</u>

1

2       THE CLERK:  Court is now in session in the matter

3  of United States vs. Shawn Herron, Matter Number 20-10145.

4       Would counsel please identify themselves for the

5  record, starting with the government.

6       MS. CARRIS:  Good morning, your Honor,

7  Eugenia Carris for the United States.  Mr. Dell'Anno

8  apologizes for not being here.  He's been required to

9  quarantine.

10:08AM 10       THE COURT:  All right.  Good morning.

11       MR. GROSSBERG:  Good morning, your Honor,

12  Bernard Grossberg for Mr. Herron, who is present.

13       THE COURT:  All right.  Good morning.  Am I

14  correct that we are here for a change of plea without a

15  plea agreement?

16       MS. CARRIS:  That's correct, your Honor.

17       MR. GROSSBERG:  Yes, your Honor.

18       THE COURT:  Mr. McKillop, would you please swear

19  the defendant.

10:08AM 20       (Defendant was sworn.)

21       THE COURT:  Mr. Herron, do you understand that you

22  are now under oath and that if you answer any of my

23  questions falsely, your answers may later be used against

24  you in another prosecution for perjury or making a false

25  statement?

1          THE DEFENDANT:  I do.

2          THE COURT:  What is your full name?

3          THE DEFENDANT:  Shawn Michael Herron.

4          THE COURT:  How old are you?

5          THE DEFENDANT:  Forty-six.

6          THE COURT:  How far did you go in school?

7          THE DEFENDANT:  High school graduate.

8          THE COURT:  Are you a citizen of the

9     United States?

10:09AM 10          THE DEFENDANT:  I am.

11          THE COURT:  Have you been recently treated for or

12     diagnosed with any mental illness or psychiatric or

13     psychological problem of any kind?

14          THE DEFENDANT:  No.

15          THE COURT:  Have you been recently treated for or

16     diagnosed with any drug addiction or drug problem or

17     alcohol problem of any kind?

18          THE DEFENDANT:  No.

19          THE COURT:  As you sit here today, are you under

10:09AM 20     the influence of any medication or drug or alcoholic

21     beverage of any kind?

22          THE DEFENDANT:  Yes.

23          THE COURT:  What is that?

24          THE DEFENDANT:  A prescription medication for

25     anxiety, Zoloft and Lamictal.

1            THE COURT:  Does that in any way interfere with

2      your ability to think clearly?

3            THE DEFENDANT:  It does not.

4            THE COURT:  Or your ability to understand what

5      we're here today to do?

6            THE DEFENDANT:  No, your Honor.

7            THE COURT:  Mr. Grossberg, are you aware of any

8      reason that we cannot continue?

9            MR. GROSSBERG:  No, your Honor.  We discussed

10:10AM 10      this, and I don't think it impairs his ability to proceed.

11            THE COURT:  Mr. Herron, have you received a copy

12      of the indictment pending against you, that is, the written

13      charges made against you in this case?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Have you fully discussed the charges

16      against you and the facts and circumstances of your case

17      with Mr. Grossberg as your lawyer?

18            THE DEFENDANT:  I have, yes.

19            THE COURT:  Are you fully satisfied with the

10:10AM 20      counsel and representation and advice given to you in this

21      case by your lawyer, Mr. Grossberg?

22            THE DEFENDANT:  Yes.

23            THE COURT:  Do you understand that you do not have

24      any kind of plea agreement with the United States

25      Government?

1                THE DEFENDANT:  I do.

2                THE COURT:  Has anyone made any promise or

3        assurance to you of any kind in an effort to get you to

4        plead guilty?

5                THE DEFENDANT:  No.

6                THE COURT:  Has anyone attempted in any way to

7        force you to plead guilty or to threaten you if you did

8        not?

9                THE DEFENDANT:  No.

10:10AM 10                THE COURT:  Are you pleading guilty of your own

11       free will because you are in fact guilty?

12                THE DEFENDANT:  Yes.

13                THE COURT:  Do you understand that the crimes to

14       which you are pleading guilty are felonies?

15                THE DEFENDANT:  Yes.

16                THE COURT:  Do you understand that if I accept

17       your plea, you will be judged guilty of those crimes?

18                THE DEFENDANT:  Yes.

19                THE COURT:  Ms. Carris, would you please state the

10:11AM 20       maximum possible penalty provided by law and any applicable

21       mandatory minimum penalty?

22                MS. CARRIS:  Your Honor, as to Count 1, which

23       charges conspiracy to distribute and to possess with intent

24       to distribute cocaine, a controlled substance, the maximum

25       charge is 20 years' incarceration, five years' supervised

1    release, a $500,000 fine, forfeiture and restitution to the

2    extent charged in the indictment and a $100 special

3    assessment.

4          As to Count 2, which charges theft of mail by

5    postal employee, the maximum penalties are five years'

6    incarceration, three years of supervised release, a

7    $250,000 fine and a $100 special assessment.

8          THE COURT:  And are there any live forfeiture

9    issues?

10:11AM 10   MS. CARRIS:  There are, your Honor.  There is a

11   forfeiture count relating to the drug charge for a $4,000

12   forfeiture money judgment.

13         THE COURT:  All right.  Mr. Herron, do you

14   understand that the maximum prison term on Count 1 is 20

15   years?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that the maximum

18   prison term on Count 2 is five years?

19         THE DEFENDANT:  Yes.

10:12AM 20   THE COURT:  Do you understand that in addition to

21   a prison term, I will have the power to give you a term of

22   supervised release of up to five years on Count 1 and three

23   years on Count 2?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that if you violate

1    the conditions of your supervised release, you could be

2    given additional time in prison?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Do you understand that the maximum

5    fine on Count 1 is $500,000 and the maximum fine on Count 2

6    is $250,000?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Do you understand that by pleading

9    guilty, there may be forfeiture consequences, and you may

10:12AM 10   be required to forfeit certain property to the

11   United States?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Do you understand that in addition to

14   everything else, you'll be required to pay a $100 special

15   assessment on each count for a total of $200?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Do you understand all of those

18   possible consequences of pleading guilty, a term of

19   imprisonment, a term of supervised release, a fine, a

10:13AM 20   forfeiture and a special assessment?

21             THE DEFENDANT:  I do.

22             THE COURT:  Do you understand that by being judged

23   guilty, you may lose valuable civil rights, including the

24   right to vote, the right to hold public office, the right

25   to serve on a jury and the right to possess a gun?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I now want to talk to you about the

3     United States Sentencing Guidelines and how they might

4     affect your sentence.  The Sentencing Guidelines have been

5     issued for judges to follow when determining the sentence

6     in a criminal case.

7          They are not mandatory.  That means I do not have

8     to follow them, but nonetheless they are important.  Have

9     you and your lawyer talked about the Sentencing Guidelines

10:13AM 10   and how they might apply to you?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Do you understand that I will not be

13    able to determine your guideline sentence until after

14    probation has prepared a pre-sentence report?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Do you understand that that

17    pre-sentence report will contain information about you and

18    your criminal history, if you have one, and the crimes you

19    committed?

10:14AM 20         THE DEFENDANT:  Yes.

21         THE COURT:  Do you understand that the report will

22    also contain a recommended application of the Sentencing

23    Guidelines?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Do you understand that you'll have an

1  opportunity to read that report and to go over it with your

2  lawyer?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Do you understand that you'll have an

5  opportunity to object to anything in that report and to

6  challenge any facts reported in it and to challenge the

7  application of the Sentencing Guidelines?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand that under the

10:14AM 10  guideline system, I may have the authority to depart from

11  the guideline sentence and to give you a sentence that's

12  either higher or lower than what they call for?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand although I am not

15  required to follow the Sentencing Guidelines, I am required

16  to consider the guidelines before I impose sentence on you?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And do you understand that by law, I'm

19  also required to consider a number of different sentencing

10:15AM 20  factors, including such things as the nature and

21  circumstances of the crime, your personal history and

22  characteristics, and the need for the sentence to reflect

23  the seriousness of the offense, promote respect for the

24  law, provide just punishment, provide adequate deterrence,

25  and protect the public?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that you will not be

3     permitted to withdraw your plea of guilty if your sentence

4     is longer than you expected or you're unhappy with your

5     sentence or it's different from any sentence that your

6     lawyer might have predicted?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Do you understand that parole has been

9     abolished and if you are sentenced to prison, you will not

10:15AM 10     be released early on parole?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Do you understand that you or the

13     government or both may have the right to appeal any

14     sentence that I impose?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  Mr. Herron, do you

17     understand you have the right to plead not guilty to any

18     crime charged against you and to go to trial?

19          THE DEFENDANT:  Yes.

10:16AM 20          THE COURT:  Do you understand you have a right to

21     a trial by jury?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Do you understand that at the trial,

24     you would be presumed innocent, and the government would

25     have to prove your guilt beyond a reasonable doubt?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you understand that at the trial,

3    you would have the right to the assistance of counsel for

4    your defense?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Do you understand that you would have

7    the right to see and hear all the witnesses against you and

8    to have them cross-examined in your defense?

9          THE DEFENDANT:  Yes.

10:16AM 10          THE COURT:  Do you understand that you would have

11    the right to require witnesses to come to court to testify

12    in your defense?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Do you understand that you would have

15    the right, if you chose to exercise it, to testify in your

16    defense?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Do you understand that you would have

19    the right to refuse to testify and to refuse to put on

10:16AM 20    evidence unless you voluntarily elected to do so?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Do you understand that if you decided

23    not to testify or not to put on any evidence, those facts

24    could not be used against you?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that by pleading

2     guilty here today, if I accept your plea, there will be no

3     trial, and you'll have waived your right to a trial?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Ms. Carris, would you please summarize

6     the charges against the defendant describing the essential

7     elements of each offense charged?

8          MS. CARRIS:  Your Honor, in Count 1, the defendant

9     is charged with a violation of 21, United States Code,

10:17AM 10     Section 846, conspiracy to distribute and to possess with

11     intent to distribute cocaine.

12          The elements there are that the government must

13     prove an agreement that is specified in the indictment, not

14     some other agreement or agreements that existed between at

15     least two people to possess with the intent to distribute

16     cocaine, that the defendant willfully joined in that

17     agreement, and that one of the conspirators committed an

18     overt act during the period of the conspiracy in an effort

19     to further the purpose of the conspiracy.

10:17AM 20          In addition, your Honor, the government would have

21     to prove that cocaine is a Scheduled II controlled

22     substance, which is defined in Title 21, United States

23     Code, Section 841.

24          Excuse me, as to Count 2, I forgot there was a

25     Count 2, the defendant is charged in violation of 18

1   United States Code, Section 1709, which is theft of mail by

2   postal employee.

3          There, the government would have to prove beyond a

4   reasonable doubt that the defendant was employed by the

5   United States Postal Service at the time of the offense,

6   that while working as a postal employee, the defendant had

7   possession of a letter package bag and that the defendant

8   stole or wrongfully removed any article or thing contained

9   in that letter package bag or mail knowing it belonged to

10  someone else.

11         THE COURT:  All right.  Mr. Herron, do you

12  understand what the government would have to prove beyond a

13  reasonable doubt in order for you to be found guilty at the

14  trial as to each of those charges?

15         THE DEFENDANT:  Yes.

16         THE COURT:  Ms. Carris, would you please state the

17  factual basis for the plea, that is, what the government

18  would be prepared to prove if this case were to go to

19  trial?

20         MS. CARRIS:  Your Honor, at trial, the government

21  would present evidence in the form of witness testimony as

22  well as records from the United States Postal Service and

23  Mr. Herron's cellular telephone that would have shown that

24  from approximately September, 2018 through the time of his

25  arrest on the criminal complaint underlying this matter in

1    February of 2020 that the defendant profiled priority mail

2    parcels primarily from Puerto Rico but also from certain

3    states in the west coast of the United States, removed them

4    from the United States mail stream, took them to his

5    personal office space or elsewhere within the postal office

6    at Fall River and stole their contents if they contained

7    narcotics.

8            Now, your Honor, for the period of time that I

9    just outlined, Mr. Herron was the manager of the Fall River

10:20AM 10   Post Office, and the government's case would begin with a

11   priority mail parcel that was received in Fall River in

12   September of 2019.

13           That case, that parcel, your Honor, was found by

14   the postmaster of the Fall River Post Office in

15   Mr. Herron's office closet.

16           The evidence would show that the parcel had been

17   processed at the U.S. postal facility in Providence, but it

18   was never scanned as arrived on unit in Fall River.  This,

19   your Honor, would be part of the scheme of how Mr. Herron

10:20AM 20   stole a number of packages, that is, before they were

21   scanned in as arrival on unit in Fall River, he would

22   remove them from the mail stream and steal their contents.

23           Upon finding this package, the postmaster alerted

24   agents, and, thus, the investigation began.

25           There are several other packages of concern, too,

1    in October of 2019 that were from California that were

2    never delivered to their intended recipient.  When the

3    customer called Mr. Herron in his role as manager of Fall

4    River, Mr. Herron told them that those packages had

5    actually been put back in to be sent back to him, however,

6    that wasn't true.

7        Scanning records revealed that the parcels arrived

8    in Fall River and then disappeared.  There were also

9    several packages, your Honor, that the defendant stole that

10:21AM 10   he believed contained marijuana.  We have text messages

11   that I will outline in a moment that show that he attempted

12   to sell these packages totaling what he thought was 80

13   pounds of marijuana but what turned out to be hemp, which

14   is a legal substance, to individuals associated with his

15   brother.

16       In November, 2019 specifically, your Honor, and

17   this is the package referencing Count 2 of the indictment

18   on or about November 27th, 2019, the postmaster discovered

19   another priority mail package on Mr. Herron's desk.

10:22AM 20       This package also had been processed in Providence

21   but never scanned in as having arrived at Fall River.

22   Investigators were called and saw that the package had been

23   opened and tampered with and was empty.

24       Agents also installed, your Honor, covert cameras

25   in the public areas of the Fall River Post Office, and

1    there is evidence of Mr. Herron inappropriately handling

2    packages from that time through his arrest in February.

3         Now, as the Court may recall from the motion to

4    suppress hearing, Mr. Herron confessed to this scheme prior

5    to his arrest in February, and his confession confirms what

6    agents had determined through the course of the

7    investigation, that is, that he had targeted packages, he

8    indicated that he stole at least 15 packages from the mail

9    over the course of the conspiracy, and he did so at the

10:23AM 10   urging of his brother, who was working with an individual

11   known to the defendant and his brother as having been

12   someone who distributes drugs in and around the Brockton

13   area.

14        Mr. Herron would be instructed which packages to

15   target, mostly, as I said, from Puerto Rico but some from

16   states, including California and Oregon, and specifically,

17   your Honor, he had been told to target packages containing

18   cocaine.

19        Now, going to back to the November 27th package,

10:24AM 20   your Honor, Mr. Herron agreed and agents downloaded the

21   contents of his cell phone and text messages soon after the

22   November 27th incident confirm that Mr. Herron had taken

23   what he believed to be cocaine out of the package to sell

24   to an individual by the name of Bill, who was his brother's

25   drug contact.

1          And I want to just summarize some of the text

2    messages between the defendant and his brother from that

3    time period, specifically texts from November 29th and

4    November 30th of 2019.

5          Mr. Herron says, "Do you open it?  Did you open

6    it?"

7          His brother replies, "It's wrapped really good."

8          Mr. Herron says, "Should be a full one, I hope."

9          His brother replies, "It's not a full one I don't

10:25AM 10   think."

11         Mr. Herron says, "Are you going with him to find

12   out?"

13         His brother says, "He will Facetime me."

14         A little while later, his brother says, "It was

15   271, and he said it's not the best, he will give you four."

16         Mr. Herron says, "Four for half a key?  Is he

17   fucking kidding me?"

18         His brother says, "It's less than a half.  I told

19   him more.  He said I can pick it up."

10:25AM 20         Mr. Herron says, "He needs to give me five, at

21   least, but if he's stuck on four, I'll take it, and he can

22   fuck off.  I don't believe for one second that it was only

23   271 grams.  He just lost a ton of money, boy.  He should be

24   going 50-50 with me.  That's 13K worth of shit.  It's at

25   least five, or he gets nothing."

1      His brother replies, "He says he's not low balling

2 you, he's going by how it's mixed.  Your call.  My other

3 boy isn't back until Wednesday.  He's watching his son's

4 college ball this week."

5      Mr. Herron replies, "I'll take the four and he can

6 go fuck himself, no more for him.  What time is this cheap

7 low-balling prick giving you the money today?"

8      His brother replies, "He says this morning."  This

9 is the following day.

10:26AM 10      Mr. Herron says, "Okay, perfect.  Can you meet me

11 at Home Depot?  I'm at Brockton.  I'm Crescent Street."

12      Your Honor this 4,000 is the basis of the

13 forfeiture that is in the indictment.

14      I would note that there would be testimony that

15 cocaine is a Scheduled II controlled substance, and that,

16 as I said, Mr. Herron -- and that there would also be

17 testimony that "kilogram" or "key" is in reference to

18 drugs.  The agent would testify that the pricing appears to

19 be cocaine and not fentanyl or heroin, which might also be

10:27AM 20 measured in grams.

21      With regard to the text messages that reference

22 the fake marijuana, those are between November 16, 2019 and

23 December 1, 2019, again, between Mr. Herron and his

24 brother.

25      Mr. Herron begins, "He's pulling some BS, it's 35

1   or fuck Jim and his bullshit.  He's had it for hours.  It's

2   35 and not a penny lower.  35 for 80P is a steal."

3         Then later, he says, "Tell him 28 for all.  See

4   what he's willing to pay, maybe 400 each for 32."  That is

5   per pound, your Honor.

6         "When we going to know?  I have big plans for that

7   money, and he backed out.  He's going to make more than 350

8   per pound if he'd just write it up, I'd say.  I'd want to

9   get a hit run for my back room and new windows and a tile

10  floor back there.  Would he be willing to take it at 24K?

11  That's the lowest I'd say I'd go.  That's 300 each."

12        Later on, Mr. Herron continues, "Bring them over.

13  I haven't seen them in a long time.  Even if I get 12 to

14  15K, I could care less."

15        "FYI, that stuff is not home grown, it's from a

16  farm in Oregon.  That's what the fake paperwork is.  They

17  use the fake paperwork to make it look legit."

18        His brother says, "I have it, but there's like no

19  crystals on it.  I will get it, but just so you know, it's

20  CBS, not weed."

21        Mr. Herron says, "What is CBS?"

22        He says, "CBD, it's imitation weed."

23        I think that covers it, your Honor.

24        THE COURT:  All right.  Mr. Herron, do you

25  disagree with anything in the government's description of

1    the facts?

2              THE DEFENDANT:  No.

3              THE COURT:  All right.  I will take the change of

4    plea.

5              THE CLERK:  Mr. Herron, please stand.  Count 1 of

6    the indictment charges you with conspiracy to distribute

7    and to possess with intent to distribute controlled

8    substance in violation of Title 21, United States Code,

9    Section 846.

10:29AM 10         How do you now wish to plead, guilty or not

11   guilty?

12             THE DEFENDANT:  Guilty.

13             THE CLERK:  Count 2 of the indictment charges you

14   with theft of mail by postal employee in violation of

15   Title 18, United States Code, Section 1709.  How do you now

16   wish to plead, guilty or not guilty?

17             THE DEFENDANT:  Guilty.

18             THE CLERK:  Thank you.  You may be seated.

19             THE COURT:  It is the finding of the Court in the

10:29AM 20   case of United States vs. Shawn Herron that the defendant

21   is fully competent and capable of entering an informed

22   plea, that the defendant is aware of the nature of the

23   charges and the consequences of the plea, and that the plea

24   of guilty is a knowing and voluntarily plea supported by an

25   independent basis in fact containing each of the essential

1    elements of the offenses charged.

2        The plea is therefore accepted, and the defendant

3    is now adjudged guilty of those offenses.

4        Mr. Herron, as I've told you, a written

5    pre-sentence report will be prepared by probation to assist

6    me in determining your sentence.  You'll be asked to give

7    information for that report.  Your lawyer may be present,

8    if you wish.  It's important that the report be accurate.

9    It will not only affect what sentence you receive but what

10:30AM 10    happens to you after you are sentenced.  For example, if

11    you are sent to prison, it will affect where you are sent

12    and what happens to you when you arrive.

13        Even minor mistakes in the report should be

14    corrected.  You'll have a chance to read that report and to

15    go over it with your lawyer and to make objections to it

16    before the time of sentencing.

17        Both your lawyer and you personally will have the

18    opportunity to speak on your behalf at the time of

19    sentencing.  I will therefore refer you to probation for

10:31AM 20    the presentence investigation and the preparation of the

21    report.

22        Before the pandemic that process usually took

23    about 12 weeks to complete.  It's taking a little longer

24    now.

25        Matt, do you have a date?

1          THE CLERK:  Thursday, February 17th at 2 p.m.

2          THE COURT:  Thursday, February 17th at 2 p.m.

3    Does that work, Ms. Carris?

4          MS. CARRIS:  It does, your Honor, thank you.

5          THE COURT:  Mr. Grossberg.

6          MR. GROSSBERG:  Yes, your Honor.

7          THE COURT:  All right.  And what was the

8    government's position on release pending sentencing?

9          MS. CARRIS:  Your Honor, Mr. Grossberg and I have

10   discussed, and we do not object to Mr. Herron staying out

11   on the conditions that have been previously set.

12         THE COURT:  All right.  Is this something where I

13   need to find exceptional circumstances?

14         MS. CARRIS:  It is, your Honor.

15         THE COURT:  I find under the statute, is it 3145?

16         MS. CARRIS:  I'm sorry, I don't know the statute

17   off the top of my head, your Honor.

18         THE COURT:  All right.  I find under 18 U.S.C.,

19   Section 3145(c) that it's been clearly shown that there are

20   exceptional reasons why detention pending imposition of the

21   sentence would not be appropriate, and the government has

22   assented to release.

23         Mr. Herron, I'm going to release you on the same

24   conditions that you've been under so far.  Whatever

25   obligations, requirements, restrictions you have are going

1    to continue.  Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  The only thing that's changed is

4    you're no longer presumed innocent, you've now pleaded

5    guilty, and if something goes wrong or if you violate your

6    conditions, that will be taken into account.  Do you

7    understand that?

8              THE DEFENDANT:  I do.

9              THE COURT:  Do you believe you understand the

10:33AM 10   conditions of your release?

11             THE DEFENDANT:  I do.

12             THE COURT:  Do you have any questions for me about

13   them?

14             THE DEFENDANT:  No, sir.

15             THE COURT:  I will order, as I said, release on

16   the same conditions pending imposition of the sentence.  Is

17   there anything further, Ms. Carris?

18             MS. CARRIS:  No, your Honor, thank you.

19             THE COURT:  Mr. Grossberg.

10:33AM 20   MR. GROSSBERG:  No, your Honor.

21             THE COURT:  Thank you.  We'll stand in recess.

22             THE CLERK:  All rise.

23             (Whereupon, the hearing was adjourned at

24   10:33 a.m.)

25

1

2                          C E R T I F I C A T E

3

4              UNITED STATES DISTRICT COURT )

5              DISTRICT OF MASSACHUSETTS ) ss.

6                       CITY OF BOSTON )

7

8

9         I do hereby certify that the foregoing transcript,

10   Pages 1 through 25 inclusive, was recorded by me

11   stenographically at the time and place aforesaid in Criminal

12   Action No. 20-10145-FDS, UNITED STATES of AMERICA vs.

13   SHAWN HERRON and thereafter by me reduced to typewriting and

14   is a true and accurate record of the proceedings.

15         Dated this November 1, 2021.

16

17                       s/s Valerie A. O'Hara

18              _____

19                  VALERIE A. O'HARA

20                  OFFICIAL COURT REPORTER

21

22

23

24

25