UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSSETTS

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 20-cr-10145-FDS |
| | ) | |
| SHAWN HERRON, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDOM

The government respectfully submits this sentencing memorandum in connection with the sentencing of defendant Shawn Herron, scheduled for March 7, 2022. Herron, a former supervisor at the United States Postal Service, pled guilty in this case to a two-count indictment charging conspiracy to distribute and possession with intent to distribute cocaine, and theft of mail by a postal employee. The Probation Office calculated the Sentencing Guidelines recommendation of 21 to 27 months. There is no plea agreement.

The government recommends that this Court sentence the defendant to 21 months incarceration, 3 years supervised release, a criminal fine within the guideline range as calculated by the Court, $4,000 in forfeiture, and a mandatory $200 special assessment. For the reasons set forth below, considering all of the factors set out in 18 U.S.C. § 3553(a), the government submits that the proposed sentence is sufficient but not greater than necessary to satisfy the interests of justice in this case.

## ARGUMENT

While a supervisor at the Fall River Post Office, Herron stole packages from the U.S. mail that contained illegal drugs, and sold the contents of those packages for his own personal gain.

Over a period of about a year and half, Herron stole at least 15 packages from the mail. *See* Dkt. 80, Hrg. Tr. at 43:12-13. Some packages he intercepted himself; some he had other postal employees remove from the mail under the guise of his managerial duties. One of the packages Herron stole from the mail contained 271 grams of suspected cocaine, which Herron sold to an apparent drug dealer for $4,000. Herron also stole another set of packages he believed contained 80 pounds of marijuana, which he unsuccessfully tried to sell for $35,000. And why did Herron abuse his position with the U.S. Postal Service and sell illegal drugs he stole from the mail? Greed. Herron used the proceeds of his illegal drug transactions—which were pure profit for him since he obtained the drugs from pilfered mail parcels—for personal gain, paying for things like renovations on his home.

That is why the government believes a period of incarceration within the guidelines range is appropriate here. In particular, the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of that offense support the government's recommendation.

**A. The Nature and Seriousness of the Offense Merit a Period of Incarceration**

Herron not only conspired to distribute dangerous drugs, but he abused his position with the U.S. Postal Service to do it. That abuse of his position of trust makes Herron's crimes particularly insidious, and the Court must account for both the drug activity and the abuse of trust in crafting a sentence that promotes respect for the law and provides just punishment for the offense.

The U.S. Postal Service trusts its employees "to resist the temptation to appropriate the contents of items of mail for themselves." *United States v. Ajiboye*, 961 F.2d 892, 895 (9th Cir. 1992). When a postal worker violates that trust, as Herron did here, it "undermines public confidence in the integrity of the mails." *Taub v. Frank*, 957 F.2d 8, 11–12 (1st Cir. 1992). Given

the critical importance of the U.S. Postal system, and the special vulnerability of the system to abuse by postal workers, the government has a significant interest in prosecuting criminal conduct by postal employees. *See United States v. Kokinda*, 497 U.S. 720, 739 (1990) (Kennedy, J., concurring).

Herron abused both the public's trust in the U.S. Postal Service and the Postal Service's trust in him when he targeted, intercepted, and rifled through packages entering his duty station. Not only did Herron abuse his own access to the mails, but at times he also had subordinate postal employees do his bidding for him. Herron told other employees to remove his desired parcels from the mail by claiming that it was at the direction of postal inspectors—a complete fabrication.

Herron's crime is made worse by the fact that what he stole from the mail was a controlled substance—cocaine—and he endangered the community by selling it for personal profit. What's more, while Herron pled guilty to conspiracy to possess and distribute cocaine, his intended criminal activity extended beyond that. *See Payne v. Tennessee*, 501 U.S. 808, 820–21, (1991) (holding that "the sentencing authority has always been free to consider a wide range of relevant material"); *United States v. Alvarez–Núñez*, 828 F.3d 52, 55 (1st Cir. 2016) (holding that "this freedom allows an inquiry broad in scope, largely unlimited either as to the kind of information [the sentencing court] may consider, or the source from which it may come." (citing *United States v. Tucker*, 404 U.S. 443, 446 (1972)).

For more than a year and a half, Herron profiled Priority Mail parcels passing through the Fall River Post Office. Herron confessed to targeting and taking over a dozen packages coming from Puerto Rico, a location he believed to be a common source for cocaine. Text messages confirm that, in one instance alone, he obtained and sold 271 grams of cocaine. Text messages also show that he tried to sell about 80 pounds of "marijuana" three different times, failing to

conclude the sale only when his brother informed him that the substance was legal hemp, not illegal marijuana. When questioned by investigators, Herron stated that he probably would have continued targeting and diverting parcels if given the opportunity.

In his statements to investigators when first confronted, Herron attempt to minimize or obfuscate his scheme. For example, Herron's explanation for the crimes—that he was selling drugs to pay off his brother's debt—is belied by the fact that he clearly intended to personally profit from the scheme. Herron claimed in text messages that he "had big plans for [the] money," and he expected the money to fund "a hit [*sic*] run for my back room and new windows and a tile floor." *See also* Dkt. 80, Hrg. Tr. at 45:24 (admitting to home renovations). Despite that, Herron submitted a hand-written sworn statement to agents that was materially different, in apparent attempt to conceal his criminal conduct.

In sum, the nature of the offense before the Court is a Post Office manager brazenly abusing his position to steal parcels from the mail that he believed contained illegal drugs, and then selling those drugs to fund his self-indulgences. Considering that, the government submits that a 21-month period of incarceration is necessary to promote respect for the law and provide just punishment for the offense.

B. **The government's recommendation is supported by the Sentencing Guidelines**

As recited in the PSR, the Sentencing Guidelines recommendation for this case is a range of imprisonment of 21 to 27 months.[1]

---

[1] As noted in the PSR, Herron does not get a 2-level reduction under § 2D1.1(b)(18) because he has more than one criminal history point. The relevant guidelines provisions are based on the safety valve criteria enumerated in 18 U.S.C. § 3553(f). Section 3553(f)(1) was recently amended by the First Step Act to change the criteria from no more than one criminal history point to not "more than four criminal history points, excluding any criminal history points resulting from a 1-point offense," but an analogous change has not been made in U.S.S.G. § 5C1.2(a)(1). Accordingly, a correct application of the applicable

The Probation Office correctly calculated a two-point enhancement to Herron's base offense level based on defendant's abuse of a position of trust. The enhancement applies if the "defendant held a position of public … trust and that he used the position to facilitate or conceal his offense." *United States vs. George*, 841 F.3d 55, 67 (1st Cir. 2016) (citing *United States v. Pacheco-Martinez*, 791 F.3d 171, 178 (1st Cir. 2015)). Specifically, as noted in the application notes, the two-level enhancement "*shall* apply to … [a]n employee of the United States Postal Service who engages in the theft or destruction of undelivered United States mail." U.S.S.G. § 3B1.3, App. n. 2 (emphasis added). That is because "[a]ll employees of the United States Postal Service are, by the nature of their employment status, in a *per se* position of trust as related to the theft or destruction of undelivered United States mail." *United States v. Ikechukwu*, 492 F.3d 331, 334 (5th Cir. 2007). Thus, there is no doubt that Herron held a position of public trust and deserves the enhancement.

The rationale for applying this enhancement to postal employees is fitting here. As a postal supervisor, Herron had physical access to parcels and exercised his discretion to divert the parcels, even though physically handling packages was not part of his job description. Herron admitted that when he was unable to intercept packages himself, he instructed other postal employees to hold packages for him. Herron would then take the pilfered parcels to his government-provided office space, open them, and steal their contents if they contained controlled substances. To conceal his offense, Herron gave false information to customers, telling them that their parcels were returned to sender when he had, in fact, taken the contents and discarded the packaging. Herron also attempted to conceal his crimes by manipulating the destination scans on parcels to

---

guidelines does not award Herron a 2-level reduction. Even if a 2-level enhancement were to apply, though, Herron's Sentencing Guidelines range would be 15 to 21 months.

obscure that they were undelivered. All of this behavior clearly warrants the two-level enhancement for abuse of trust, and a period of incarceration.

## CONCLUSION

For all of the above reasons, the government recommends that this Court impose sentence as follows: 21 months incarceration, 3 years supervised release, a criminal fine within the guideline range as calculated by the Court, $4,000 in forfeiture, and a mandatory $200 special assessment.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: /s/ *Charles Dell'Anno*
Eugenia M. Carris
Charles Dell'Anno
Assistant U.S. Attorneys

### Certificate of Service

I hereby certify that this document was filed on the below date through the ECF system, which sends copies electronically to the registered participants as identified on the Notice of Electronic Filing.

/s/ *Charles Dell'Anno*
Charles Dell'Anno
Assistant United States Attorney

Date: February 28, 2022