UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| V. ) | Criminal No. 1:20-CR-10145-FDS |
| ) | |
| SHAWN HERRON ) | |
| ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

The defendant, Shawn Herron, in the above-entitled matter, submits the following memorandum in support of Defendant's Motion For Downward Departure And/Or For The Imposition Of A Non-Guideline Sentence.

**I  The Defendant's Background And Remorse**

In this case, the facts and the defendant's guilt are clear and are not disputed. The salient issue in the case, is the nature of the punishment to be imposed on a man of 47 years of age, who lead a law abiding life, except for this aberration and who has punished himself more profoundly than would incarceration punish him. This man's involvement in the charged offenses was initially at the behest of his brother and so as to try to "rescue" his brother from physical harm, as he had done for his entire life. This man admitted his involvement immediately upon being confronted by Post Office Inspectors and he is remorseful beyond words. A man who sought mental health counseling in an effort to understand and live with his guilt. And a man who is embarrassed by the harm and stress that he has caused his wife and young daughter who was bullied and teased at her high school for her father's publicized actions, to the extent that she had to leave school. A man who lost his career and financial benefits, after working himself up for the past 15 years from a letter carrier to an assistant manager of a large post office. A man

1

who has condemned himself for his criminal actions and their effects on his family. "Now my soul's palace has become a prison". (Shakespeare, III Henry IV, II .i)  Justice in this case, is the imposition of a lengthy period of probation with special conditions, including but not limited to, extensive community service at a meaningful facility.

  The defendant was born on March 7, 1975 in Boston and he will be sentenced by this Court on his birthday.  He was raised in a housing project in Quincy and graduated from North Quincy High School.  The defendant and his wife, Melissa Herron, have been together for the past 25 years and they were married on May 11, 2002.  They are the parents of two daughters: Brianna Herron, age 24 and Amber Herron, age 17.  The defendant has another daughter Brittany Herron, age 30, from a high school relationship, who was raised by the defendant and his wife from a young age.  The defendant began employment with the United States Post Office as a mail carrier in Brockton and during a 15 year career, after working in many local post offices, he worked himself up to the position of Acting Supervisor Officer of the Fall River Post Office.  On several occasions, during his career, the defendant assisted postal inspectors in internal and external and extended investigations.

  On February 11, 2020, upon being confronted by two postal inspectors, the defendant immediately and completely, admitted his guilt of the theft of mail packages from the Fall River Post Office.  Although he had suspicions that he was under investigation and acquainted with one of the inspectors, the defendant waived his Miranda rights, provided a recorded and written "confession" and consented to the search of his personal and work cell phones and computer.  The defendant explained to the

inspectors, that he began the theft of packages in an, to say the least, ill-advised and foolish effort to help his brother, who was in physical danger because of a drug debt to a local drug dealer. (PSI at paragraph 15) (Defendant's statements dated 2/11/20) Initially, the defendant took packages which were described to him as likely containing cocaine given their return addresses, post marks and delivery addresses. Subsequently, the defendant took other packages which he believed contained illicit substances and directed postal employees to divert certain packages to him. The unsophisticated nature of the defendant's efforts, is documented by the fact that his texts to his brother recorded his transgressions. In addition to his use of his cell phone, the criminal naivety of the defendant is demonstrated by his taking several packages containing hemp, which he believed was marijuana and that he did not understand could not be sold as marijuana. He also did know what CBD designated nor did he have an understanding of the price of marijuana. (PRI at paragraphs 12) In the United States' Motion For Order Of Forfeiture (Money Judgment) the government sought, "…a forfeiture money judgment in the amount of $4,000 on the grounds that such amount is <u>equal to the amount of proceeds Defendant derived from the offenses</u>" (at paragraph 4). The defendant did not oppose the government's motion and the Court issued an Order Of Forfeiture, which the defendant will immediately pay. The defendant realized absolutely no financial gain in this matter. Contrary to the government's contention, that the defendant, "…used the proceeds of his illegal drug transactions – which were pure profit for him since he obtained the drugs from pilfered mail parcels – for personal gain, paying for things like renovations on his home" (Government's Sentencing Memorandum at 2), any and all renovations to the

defendant's home were paid by "stimulus" checks that he received during the current pandemic.

On October 22, 2021, the defendant entered guilty pleas to each count of the Indictment and accepted full responsibility for his actions. The defendant has remained on release for the past 24 months, since his arrest on February 27, 2022, without even an inference of a violation of a release condition.

**II  Offense Level Computation**

(A)  Specific Offense Characteristics

The PSI at paragraph 24, states that there are no "Specific Offense characteristics" and notes that:

> The 2021 Sentencing Guidelines Manual has not been amended pursuant to the First Step Act.  Since the Guidelines Manual has not been amended, the defendant does not meet the criteria in USSG §5C1.2(a) (because he has more than one criminal history point) and is therefore ineligible for the two-level reduction per USSG §2D1.1(b)(18).  The discrepancy between the Guidelines and the Act is a factor that the Court can consider when determining the appropriate sentence per 18 U.S.C. §3553(a).
> (PSI at paragraph 24 N2)

The defendant respectfully asserts, in accordance with the "recommendation" stated in the PSI that, "even though, the 2021 Sentencing Guidelines Manual has not been amended pursuant to the First Step Act", (PSI at paragraph 24 and page 25) the defendant should be considered for two-level reduction per U.S.S.G. §2D1.1(b)(18), as the Act is prevailing law.  Moreover, the computation of a fair and appropriate sentence should not depend on the formality of amending the manual.  In addition, although under §2D1.1(b)(18), the defendant does not meet the criteria described in §5C1.2(a) because he has more than one criminal history point, as explained below, the calculation of the

defendant's criminal history, greatly over states his prior criminal conduct and he should receive the benefit of a two-point reduction pursuant to §2D1.1(b)(18).

There is no viable reason that the "discrepancy" between the manual and the Act should not be resolved in favor of the defendant. Fundamental fairness, especially given the on-going pandemic, resulting in delays in judicial and other ministerial matters such as printing and distribution of revised sentence manuals, should not preclude application of the First Step Act to the defendant. Whether by a two-level reduction in the Offense Level Computation or by virtue of a two-level variance, the defendant should receive the benefit of the First Step Act.

(B)  Adjustment For Role In The Offense

The PSI Report awards the defendant a point for Adjustment For Role In The (theft of mail) Offense, PSI on the ground that:

> The defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense.  Namely, the defendant abused his position as a United States Postal employee, and more specifically, his role as manager, to commit the instant offense; therefore, increase by two levels. USSG §3B1.3.
>
> (PSI at paragraph 32)

The defendant submits that he should not be given an adjustment for his role in regard to Count 2, theft of mail by postal employee in violation of 18 U.S.C. §1709, because §3B1.3, explicitly states that, "This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristics". 18 U.S.C. §1709 includes the "specific offense characteristics" of a violator being a "postal service officer or employee".  If the defendant had not been either a postal service officer or employee, he could not have been charged under this statute and since the

5

statute requires that a violator be either an officer or employee, as a specific offense characteristic, he could also be awarded under §3B1.2 a two (2) level adjustment as to Count 2.

In response to the defendant's claim, the revisions to the PSI report states that:

> Application Note 2 of U.S.S.G. §3B1.3 specifically states that this adjustment shall apply to '[a]n employee of the United States Postal Service who engages in the theft or destruction of undelivered United States mail.' The defendant's position as a manager also facilitated his commission of the instant offense, given his access and authority, such as when he had other employees pull packages for him, purportedly under the guise that he was assisting USPS inspectors, which was untrue. No change is made to the report.        (PSI at page 28)

"Commentary in the Guidelines manual that interprets or explains a guideline is authorization unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993). The First Circuit has recognized that, "Commentary, though important, may not be confused with gospel" and "is not binding in all instances." United States v. Piper, 35 F.3d 611, 617 (1st Cir. 1994), citing Stinson v. United States, supra at 43-44. "In particular, commentary carries no weight when the Commissions' suggested interpretation of a guidelines is 'arbitrary, unreasonable, inconsistent with the guideline's text or contrary to law" Id. at 67, quoting United States v. Fiore, 983 F.2d 1,2 (1st Cir. 1992). Application Note 2 of U.S.S.G. §3B1.3 is "inconsistent" and conflicts with §3B1.3 as the Guideline does not mention nor refer to a postal service officer or employee. In addition, the note is inconsistent with the §3B1.3 as it specifically states this adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristics. In effect, the application note, imposes an enhanced penalty for a role adjustment for the same offense characteristics proscribed

by the governing statute, 18 U.S.C. §1709. It must also be noted that: The only valid function of commentary is to interpret or explain the text of a guideline. Stinson v. United States, supra at 45. "…application notes are interpretations of, not additions to, the Guidelines themselves." United States v. Rollins, 836 F.3d 737, 742 (7th Cir. 2016) (commentary has "no legal force independent of the guideline," but is "valid (or not) only as an interpretation of §4B1.2." See also, United States v. Bell, 840 F3d 963, 967 (8th Cir. 2016); United States v. Soto-Rivera, 811 F.3d, 58-62 (1st Cir. 2016); United States v. Shell, 789 F.3d 335, 345 (4th Cir. 2015) (reaffirming that commentary in §4B1.2 cannot have "freestanding definitional power"). Application Note 2 of §3B1.2 should not be applied to the instant case as it is inconsistent with and contrary to the specific language of §3B1.3.

(C) The application of the First Step Act, results in a 2 point reduction in the defendant's offense level computation as to Count 2. The elimination of the adjustment for role in the offense as to Count 2 results in a Role adjustment of 0 in regard to the theft of mail conviction.

### III  The Defendant's Criminal History Over Represents His Criminal Conduct

The defendant's Criminal History Category over represents his criminal conduct. The PSI Report awards the defendant one criminal history point for each of his convictions on: (1) 3/10/2011 for the offense of assault and battery (paragraph 48); (2) 7/2/11 for the offense of resisting arrest and threatening (Paragraph 49); (3) 11/26/14 for the offenses of assault and battery (Paragraph 50). The defendant was placed on probation for each conviction, which he served without incident and he was discharged from probation in each case.

U.S.S.G. §4A1.3(b)(1) allows this Court to grant a downward departure for an overestimated criminal history. §4A1.3(b)(1) reads:

> STANDARD FOR DOWNWARD DEPARTURE – If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

This standard has been interpreted to allow a court to depart from the Guidelines as:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.
> United States v. Morrison, 46 F.3d 127, 130 N.5 (1st Cir. 1994)

In response to the defendant's objection to the Probation Department's computation of his criminal history, the revised PSI Report states that:

> The criminal history is correctly calculated and all points awarded are within the appropriate timeframe for scoring purposes. Counsel's personal interpretation regarding the seriousness and circumstances of each offense is not reason in and of itself for departure. There is also no information indicating that the criminal history category "substantially over-represents the seriousness of the defendant's criminal history" pursuant to U.S.S.G. §4A1.3(b). …"   (PSI at page 27)

The defendant asserts that his criminal history should be reduced, as is authorized by §4A1.3, because a Criminal History Category III overstates the seriousness of his prior convictions and/or his propensity to commit future crimes. The defendant's three prior convictions occurred 23 and 11 years ago. The offenses described in Paragraphs 48 and 49 involved incidents between the defendant and his wife Melissa Herron, which did not

8

require medical attention.  Melissa Herron will indicate to the Court that she was as much to blame for these occurrences between her and the defendant as the defendant was to blame.  Moreover, the defendant and his wife are the parents of two daughters and they have remained married for 20 years.  Each incident was classified as a domestic incident and the defendant was alleged to have been intoxicated on each occasion.  In each case, the defendant and his wife reconciled and there have been no other such incidents for the past 23 years.  The offense described in Paragraph 50, involved an argument at Gillette Stadium during a sports event.  The defendant pushed an individual who was later identified as a security officer.  Each prior conviction, occurred as a result of the defendant's intoxication and he readily admits that he had an alcohol abuse problem.  The defendant, in full compliance with his release conditions, has not used alcohol since his arrest 24 months ago.  As acknowledged in the PSI, the defendant reports that "… his sobriety is going well and he feels cleaner". (PSI at paragraph 80)  The defendant would welcome alcohol abuse treatments, if in the discretion of the Probation Department, such treatment is warranted.  In each case, the respective courts found it appropriate to place the defendant on probation and the defendant fully satisfied the imposed conditions of probation.  These remote and relatively minor incidents, which are distinct and unlike the present charges, should not be utilized to place the defendant in Criminal History Category III so as to increase his potential sentence.

     Awarding the defendant with 3 criminal history points for the two domestic incidents which occurred 23 years ago and one point for a push of a security officer at a sporting event 11 years ago, results in increasing the recommended sentence by six (6) months, regardless of whether or not the defendant is found to have an offense level of 13

or 15 (i.e. Criminal History Category I and Offense Level of 13 = 12 to 18 months; Criminal History Category I and Offense Level of 15 = 18 to 24 months; whereas, Criminal History Category III and Offense Level of 13 = 18 to 24 months; Criminal History Category III and Offense Level of 15 = 24 to 30 months. Most importantly, a Criminal History Category of III, removes the case from Zone C, so as to dissuade the Court from imposing a probationary sentence. The remoteness of the defendant's prior convictions, their nature and the fact that they are greatly dissimilar from the instant offense, warrants this Court in Court in holding that the defendant's criminal history over represents his criminal conduct and that the defendant should be granted an downward departure pursuant to U.S.S.G. §4A1.3(b)(1) for an over estimated criminal history.

### IV. Grounds For Departure From The Sentencing Guidelines

In his responses to the initial PSI Report, the defendant stated that, "the factors listed in 18 U.S.C. §3553(a)(2) to (7), in combination with the nature of the offenses, require that the sentence recommended by the Guidelines be reduced by at least two levels, so that the defendant falls in Zone 3, which renders him eligible for a probationary sentence." In the revised PSI Report, the Probation Officer indicates that, "This information is included herein for the Court's review" (PSI at pages 27-28). In addition, as stated above, in regard to the application of the First Step Act, the Probation Officer noted that, "The discrepancy between the Guidelines and the Act is a factor that the Court can consider when determining the appropriate sentence per 18 U.S.C. §3553(a)". (PSI, N2 at paragraph 27) In addition to 18 U.S.C. §3553(a), deviation from the Guidelines is also permitted by U.S.S.G. §5K2.0, which allows departure from the Guidelines, if the sentencing court determines that (1) any factor makes the case atypical, meaning that it

takes the case out of the "heartland" of cases involving the conduct described in the applicable guideline, and (2) that factor should result in a different sentence. ("Presence of any [factor that has not been given adequate consideration by the Sentencing Commission] may warrant departure from the guidelines, under some circumstances, in the discretion of the sentencing court." U.S.S.G. §5K2.0 Departures and/or deviations from the Guidelines are reviewed for an abuse of discretion, Koon v. United States, 518 U.S. 81, 98 (1996) and the Guidelines are not mandatory, but merely advisory. United States v. Booker, 543 U.S. 220 (2005).

The Guidelines sentencing ranges are not only advisory, but are only one factor in an array of factors to be considered in determining the sentence which is **"sufficient, but not greater than necessary"** to serve the objectives of sentencing. Kimbrough v. United States, 128 S. Ct. 558, 570 (2007) (quoting 18 U.S.C. §3553(a)). (emphasis added) In determining a sentence according to this "parsimony principle," a sentencing court is charged with considering every defendant individually and fashioning a sentence based on all the factors delineated in §3553(a).

> In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them. Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court should 'consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.
> United States v. Martin, 520 F.3d 87, 91 (1st Cir. 2008) (quoting Gall v. United States, 128 S.Ct. 586, 598 (2007)

The First Circuit describes the §3553(a) sentencing factors as a "tapestry through which runs the thread of an overreaching principle… (sometimes referred to as the

11

'parsimony principle')." United States v. Rodriquez, 527 F.3d 221, 228 (1st Cir. 2008). Moreover, the Supreme Court has firmly instructed that sentencing courts "may not presume that the Guidelines range is reasonable." Gall v. United States, 128 S. Ct. 586, 596 (2007) (citing Rita v. United States, 127 S. Ct. 2456 (2007)). Rather, a sentencing court must make an "individual assessment based on the facts presented." Gall, supra at 597. Above all, a court's final determination of a sentence must reflect "§3553(a)'s overreaching instruction to 'impose a sentence sufficient, but not a greater than necessary' to accomplish the sentencing goals advanced in §3553(a)(2)" namely, retribution, deterrence, incapacitation and rehabilitation. See, Kimbrough v. United States, 128 S. Ct. 558, 575 (2007).

The defendant submits that the sentence he proposes, infra, is sufficient, but not greater than necessary, to accomplish the statutory goals in sentencing this defendant and that "sound, case-specific reasons" justify this variance from the guideline range.

### (A) The Nature And Circumstances Of The Offense And The History And Characteristics Of The Defendant (18 U.S.C. §3553(a)(2)

The defendant's criminal behavior was motivated by the "altruistic" albeit foolish, attempt to "rescue" his brother from physical harm because of his debt to a drug dealer. Throughout his life, the defendant tried to "watch out" for his younger brother Keith Herron and to protect him. These efforts involved financial assistance, as well as, counseling him about the choices he made in his life (Keith Herron, age 42, lives in Brockton, has six children from different relationships and manages a car wash. PSI at 62) Immediately upon his arrest on February 11, 2020, the defendant in admitting his involvement in the charged offenses, explained that, "….he started stealing packages to help his brother pay a drug debt" and that, "…his brother's drug dealer 'Bill' wanted him

to target packages of cocaine." (PSI at paragraph 15 and 16). The involvement of the defendant's brother in the charged offenses, is documented by texts obtained from the defendant's cell phone. (PSI at paragraph 16) The defendant's theft of packages escalated to his taking mail for his own profit. (PSI at paragraph 12) The defendant's limited prior criminal record does not include any sort of drug related offense. (PSI at paragraph 45 to 50), but rather assaultive behavior arising from alcohol abuse. In effect, the defendant is a first time offender as to the instant offenses of theft of mail and illicit drugs.

The effects of the instant prosecution on the defendant is evidenced by the fact that he re-engaged in mental health counseling and prescribed medication. The Probative Officer verified that the defendant is involved in such counseling (PSI at paragraph 77). The defendant's return to mental health counseling is indicative of the mental toll that his involvement in criminal activity has had on him, as opposed to someone who depreciates his criminal activity. The fact that the defendant was mentally troubled by his involvement in the charged offenses, demonstrates how distraught he is, that he is not criminally minded and that he will not repeat his involvement in criminal behavior. The fact that the defendant stands before this Court, mentally disturbed by doing so, is a concrete sign that he is contrite and regrets his actions, which serves as an initial step in rehabilitation. The defendant intends to continue mental health counseling.

As stated above, the defendant's acts were as unsophisticated as could be imagined. The packages to be intercepted were described by a local drug dealer to the defendant's brother as the defendant had no knowledge of what particular packages were likely to contain illicit substances. He did not know the difference between marijuana

13

and hemp nor what CBD was.  The defendant did not try to disguise his actions and his acts were documented on his cell phone.  He did not even know what price to ask for the substance that he mistakenly thought was marijuana.  The defendant left evidence of his acts by not destroying and leaving the wrapping from stolen packages in his office.  A defendant's lack of sophistication in committing the offense has been found to be a factor meriting a downward departure.  United States v. Jagmohan, 909 F.2d 61 (2nd Cir. 1990).

### (B) The Proposed Disposition Comports With The Statutory Sentencing Goals

The proposed disposition of a long probationary sentence with special conditions, including community services serves the statutory goals of punishment set forth in 18 U.S.C. §3553:

### (C) Providing The Defendant With Corrective Treatment In The Most Effective Manner

The proposed disposition will "provide (the defendant) with corrective treatment in the most effective manner."  18 U.S.C. §3553(a)(2)(D).  Other than being detained for several hours on his prior arrests and in this matter, prior to his release conditions, the defendant has never before been incarcerated.  The relatively short incarcerations served a purpose in that it gave the defendant a "taste" of incarceration.  The proposed disposition will be more than sufficient to provide corrective treatment.

### (D) Protecting The Public From Further Crimes Of The Defendant

The proposed disposition will also meet the sentencing goal of "protecting the public from further crimes of the defendant."  18 U.S.C. §3553(a)(2)(C).  The proposed disposition encompasses sufficient time to provide the defendant, who is essentially a first offender, with a strong deterrent against any future criminal acts.  The lengthy period

of supervision, while the defendant concomitantly receives mental health counseling and serves extensive community service, will ensure that he does not revert to any sort of criminal activity. The support of his hard-working and law-abiding family and the defendant's desire to put this matter behind him, will serve to ensure that the prosecution of the defendant and the lengthy period of probation, will protect the public from further criminal activity of any nature.

### (E) Reflecting The Seriousness Of The Offense, Promoting Respect For The Law, Providing Just Punishment And Deterring Criminal Conduct

In the instant case, the sentencing goals of "reflecting the seriousness of the offense, promoting respect for the law and providing just punishment for the offense," 18 U.S.C. §3553(a)(2)(B) and deterring criminal conduct, 18 U.S.C. §3553(a)(2)(B), are met by the proposed disposition, which will substantially restrict the defendant's liberty for a period of three years. The special conditions of probation and supervision combined with extensive community service, a hefty restitution order of all profit realized by the defendant, the loss of his career and financial benefits, will secure as a deterrent to other individuals who might be tempted to engage in the theft of mail by a postal employee.

### (F) The Sentencing Range Established By The Sentencing Commission Is Unduly Harsh

This Court may determine that the sentences advised by the United States Sentencing Guidelines for the convicted offenses, are too harsh. In Kimbrough, supra, the Supreme Court took specific notice of the respective roles and strengths of the Sentencing Commission and sentencing judges:

> In the ordinary case, the Commission's recommendation of a sentence will 'reflect a rough approximation of sentences that might achieve §3553(a)'s objectives.'

> …
> The sentencing judge, on the other hand, is 'in a superior position to find facts and judge their import under §3553(a) in each particular case.'
> …
> In light of these discrete institutional strengths, a district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case 'outside the heartland' to which the Commission intends individual Guidelines to apply.
>
> Kimbrough, supra at 562-563<br>(citations omitted)

The Supreme Court strongly suggested that the force a particular guideline should have is questionable where it has been formulated after the Sentencing Commission deviated from its traditional empirical study of sentencing practices and consequences. Id. at 567.  Consequently, the Supreme Court held that a sentencing court is free to disagree with the guideline sentencing range choice made by the Sentencing Commission, particularly in cases where there is no past empirical support for the guideline.  Id. at 570   ("as a general matter, "courts may vary [from Guideline ranges] based solely on policy considerations, including disagreements with the Guidelines".) See also, Gall, supra at 598 (recognizing institutional advantage of experienced district court judges who "see so many more Guidelines sentences than appellate courts do") citing Koon, supra at 98).

In developing the Guidelines for drug-trafficking offenses, the Commission did not use an empirical approach, but rather promulgated quantity-based guidelines as a "means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Gall, supra at 599.  See also, United States v. Cabrera, 567 F. Supp. 2d 271,276 n. 5 (D. Mass. 2008).  Judges surveyed in 2002 reported that guideline sentences for drug offenses were typically less than those for other offenses to provide fairness, to provide just punishment, to maintain sufficient flexibility

to permit individualized sentences and to avoid unwarranted disparities among similar defendants found guilty of similar conduct. United States Sentencing Commission, Summary Report: United States Sentencing Commission's Survey Of Article III Judges (2002). This Court must also consider that in regard to the charge of conspiracy to possess with the intent to distribute a controlled substance in violation of 21 U.S.C. §846, the drug weight attributable to the defendant, is based on the words of a defendant who had no knowledge of the nature of involved substances, their weight or selling prices. (PSI at paragraphs 12,16) Furthermore, the number of packages that the defendant stole and whether or not each package he removed from the mail, is not known. The drug weight which governs the base offense level in this case is based on the text of a defendant who did not even know the difference between marijuana and hemp or what CBD was. (PSI at 12) The governing drug weight in this case is based on speculation that the defendant knew the drug weight, which is contrary to the other evidence alleged by the government and as stated in the defendant's texts to his brother. Given the speculative drug weight, as permitted by Kimbrough and Gall, this Court should conclude that the guideline range is unduly harsh and "tak[e] into account the real conduct and circumstances involved in sentencing," and to impose a variant sentence for this reason alone.

     **V  The Defendant's Sentence Recommendation**

The factors listed in 18 U.S.C. §3553(a)(2) to (7), in combination with the nature of the offenses, require that the sentence recommended by the Guidelines be reduced by at least two levels, so that the defendant falls in Zone 3, which renders him eligible for a probationary sentence. Given the defendant's immediate and complete admission to the

investigating postal inspectors; his naivety regarding drug dealing and illicit drugs; the reduction required by the First Step Act; the age and different nature of his prior convictions, which overstate his prior criminal behavior; the loss of his career after working for the post office for 15 years; the psychological and other effects of the prosecution on him and his family which resulted in his seeking further mental health treatment; the initial reason that he became involved in the scheme so as to rescue his brother; the fact of the very limited financial gain and full restitution in the amount of $4,000.00 and his profound remorse, combine to indicate that a sentence of long <u>probation with special conditions, including extensive community service, is a just and appropriate disposition in this matter</u>.  The defendant respectfully requests that this Court deviate from the advisory Guidelines and find:

(1)  That the defendant's combined base offense level is level 15 and that he be credited with a 3 level deduction for his acceptance of responsibility.  The defendant's total offense level is level 13.

(2)  That the defendant's Criminal History Category is Category 1.

(3)  That the United States Sentencing Guidelines advise that a sentence in the range of 12 to 18 months be imposed.

(4)  That the defendant be placed on supervised probation for a period of three (3) years.

(5)  That the Court impose a mandatory assessment of $200.00 and that no fine be imposed.

(6)  That in addition to the mandatory conditions of probation under U.S.S.G. §5B1.3, that the Court impose special conditions of probation, including but not limited to:

(a) the defendant shall participate in and successfully complete mental health counseling at the discretion of the Probation Department; (b) the defendant shall be gainfully employed; (c) the defendant shall be subject to alcohol testing at the discretion of the Probation Department; (d) the defendant shall perform 300 hours of community service at a facility or program approved by the Probation Department and which is involved in the treatment of children suffering from mental or physical illness, such as the Boston Children's Hospital; Shriners Hospital for Children; Tufts Children's Hospital; Good Samaritan Medical Center, Brockton Children's Unit; Pappas Rehabilitation Hospital for Children, Canton; Charlton Memorial Hospital, Fall River; Taunton State Hospital; (e) the defendant shall forthwith pay restitution in the amount of $4,000.00; (f) the defendant shall comply with any other special conditions of probation that the Court deems just and appropriate.

Respectfully submitted
By his attorney,

/s/ Bernard Grossberg

_____
Bernard Grossberg
38 Green Street
Milton, MA 02186
(617) 737-8558
B.B.O. No. 212900

## CERTIFICATE OF SERVICE

    I, Bernard Grossberg, hereby certify that on March 2, 2022, I served a true copy of the **Defendant's Sentencing Memorandum** upon Assistant United States Attorneys, Eugenia Carris and Charles Dell'anno, Office of the United States Attorney, 1 Courthouse Way, Boston, MA  02210 by electronic filing to all registered users.

                                                       /s/ Bernard Grossberg
                                                       _____
                                                       Bernard Grossberg